IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LINDA F. HARDY,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )      CIVIL ACTION NO. 2:11cv230-SRW
                                         )
ALABAMA DEPARTMENT OF                    )
INDUSTRIAL RELATIONS,                    )
                                         )
            Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda F. Hardy sues her employer, the Alabama Department of Industrial Relations ("the ADIR"), claiming that it is liable to her under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, for denying her request for reasonable accommodation of her disability, and for retaliating against her for protected activity. This action is presently before the court on the ADIR's motion for summary judgment (Doc. # 36). Upon consideration of the motion, the court concludes that it is due to be denied.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or

absence might affect the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  <u>Matsushita Electrical Industrial Company v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992); <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

> Where the moving party will bear the burden of proof at trial,
>
> that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

<u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991)(*en banc*)).

# DISCUSSION[1]

## Plaintiff's Claims

Plaintiff alleges that she is a qualified individual with a disability as defined by the Rehabilitation Act and the Americans with Disabilities Act; that she made four written requests for reasonable accommodation (a change in her work schedule, permission to work from home, and/or an extension of FMLA leave); and that the ADIR denied her requests for reasonable accommodation. (Complaint, ¶¶ 22-28). She further alleges that she engaged in protected activity on or about September 3, 2009, when she "submitted a formal grievance asserting that she had been discriminated against because of her disability when ADIR took away her reasonable accommodation and placed her on Mandatory Leave without pay," and that ADIR informed her on the following day "that she had been recommended for termination." (Id., ¶¶ 34-35). Plaintiff asserts that she filed an EEOC charge on October 16, 2009, alleging discrimination under the ADA and that, after it received notice of the charge, the ADIR twice requested extensions of plaintiff's mandatory leave without pay and, on January 15, 2010, terminated plaintiff's employment. (Id., ¶ 36). Plaintiff states:

> There is a causal connection between Plaintiff's protected activity and the adverse employment actions she suffered. The day after Plaintiff filed her grievance, she was recommended for termination. Three months after she filed her EEOC charge, she was terminated. Furthermore, the decisionmaker, Director Thomas Surtees, was copied on Plaintiff's grievance submitted on September 3, 2009 and the Notice of Charge of Discrimination was sent

---

[1] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

directly to him, giving Surtees actual notice of Plaintiff's protected activity.

(Id., ¶ 37).   Plaintiff, alleging that the ADIR is a recipient of federal funds,[2] asserts two claims against it under § 504 of the Rehabilitation Act, 29 U.S.C. § 794: (1) a claim that ADIR failed in its duty to reasonably accommodate plaintiff's disability; and (2) a claim that ADIR retaliated against her for engaging in protected activity.

### Defendant's Arguments Applicable to Both Claims

<u>Issue and Claim Preclusion</u>

In its summary judgment motion, defendant repeats the collateral estoppel and *res judicata* arguments that it made in its motion to dismiss.  (See Doc. #36, pp. 10-13).  For the reasons explained at length in its order ruling on the motion to dismiss (see Doc. # 25, pp. 7-12), the court finds defendant's claim and issue preclusion arguments without merit. In analyzing the defendant's collateral estoppel argument previously, the court explained that defendant has not established a required element of this defense – *i.e.*, that the findings on the issues sought to be estopped were necessary to the Personnel Board's administrative decision.  (Doc. # 25, pp. 13-18).  The court determined  that "[i]t was not  necessary to the ALJ's recommended decision – *i.e.*, that plaintiff was not shown to be guilty of the charged violation of work rules/policies pertaining to absenteeism and leave without pay – that the ALJ determine or consider whether ADIR's actions in terminating plaintiff's employment were 'unintentional and occurred despite DIR's best efforts.'  In short, the ALJ's conclusion

---

[2]  Defendant admits that it is a "recipient of federal funds."  (Answer, ¶¶ 6, 25, 32).

4

... that the evidence did not sustain the charged violations did not depend on any finding of fact regarding whether ADIR levied the charges as a result of an unintentional error." (Doc. # 25, pp. 16-17). The basis for the court's conclusion is set forth fully in the pages preceding it (id., pp. 13-16). Defendant now presents substantially the same collateral estoppel argument as before, but adds an assertion that "[t]he reason for Plaintiff's termination was necessary to the administrative decision." (Doc. # 36, p. 11). However, defendant provides no legal analysis in support of this conclusion and has cited no legal authority suggesting that this is so. Accordingly, for the reasons stated in its order on the motion to dismiss (Doc. # 25, pp. 13-18), defendant is not due to prevail on its renewed contention that the reason for plaintiff's termination is established in its favor for purposes of this motion.

Unclean Hands

Defendant argues that plaintiff cannot recover in this case because she has "unclean hands." (Doc. # 36, pp. 16-17). Defendant cites no competent evidence in support of this contention; instead, it relies entirely on the decision of the ALJ. (Id.)(citing Exhibit 1 at pp. 20, 33). Because the ALJ's written decision is not evidence of plaintiff's behavior, it cannot satisfy defendant's burden on the present motion, i.e., to "show affirmatively the absence of a genuine issue of material fact" (see Fitzpatrick, 2 F.3d at 1115) on defendant's affirmative defense of unclean hands. Additionally, even assuming for purposes of the present motion that collateral estoppel applies to establish "a lack of cooperation on [plaintiff's] part with respect to the spirit of the FMLA," in that plaintiff failed to take steps to reduce her FMLA leave such as trying to find a doctor closer to Montgomery, "spac[ing]

5

out the doctor visits she took with her husband and son" and/or "explor[ing] other options" (see ALJ decision at pp. 32-33), defendant is not entitled to summary judgment on the basis of this defense.  While conduct need not be punishable as a crime to result in estoppel, the Eleventh Circuit has observed that the doctrine is implicated when a litigant "'has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness[.]'" In re Kingsley, 518 F.3d 874, 878 (11th Cir. 2008)(quoting In re Garfinkle, 672 F.2d 1340, 1346 n. 7 (11th Cir. 1982)).  Defendant does not contend that plaintiff falsified her leave requests or otherwise misrepresented the reasons for any of her absences. The uncooperative conduct that the ALJ describes is not sufficiently egregious to justify application of the doctrine of unclean hands to bar equitable relief.  Plaintiff's failure to explore other options that would have reduced the amount of time she was absent for medical leave does not demonstrate bad faith or unfairness at a level sufficient to warrant this court's exercise of its discretion to bar equitable relief.  See Kingsley, 513 F.3d at 878 (citing United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005) for its description of the doctrine of unclean hands as "an equitable test that is used by courts in deciding equitable fate").  Additionally, to establish its unclean hands defense, the defendant "must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted[.]" Calloway v. Partners National Health Plans, 986 F.2d 446, 451 (11th Cir. 1993).  Plaintiff asserts no FMLA claims in this action.  Her failure to take steps to limit her medical absences in keeping with the spirit of the FMLA – even assuming that this conduct constitutes "wrongdoing" sufficient to implicate the defense – is not directly related to the Rehabilitation

6

Act failure-to-accommodate and retaliation claims before the court.  For this additional reason, defendant has not demonstrated that it is entitled to summary judgment on the basis of its affirmative defense of unclean hands.

## Retaliation Claim

For employment discrimination cases, section 504(d) incorporates standards established by the Americans with Disabilities Act, expressly including 42 U.S.C. § 12203, the ADA's anti-retaliation provision.  29 U.S.C. § 794(d); 42 U.S.C. § 12203(a); Albra v. City of Ft. Lauderdale, 232 Fed. Appx. 885, 891 (11th Cir.), *cert. den.* 552 U.S. 872 (2007).  Thus, the Rehabilitation Act prohibits "retaliation against individuals who have opposed disability discrimination by issuing complaints or taking other actions."  Barton v. Board of Regents of the University System of Georgia, 478 Fed. Appx. 627, 631 (11th Cir. 2012).  To establish a *prima facie* case of retaliation under the Rehabilitation Act, a plaintiff must show "that she engaged in a protected activity, that she suffered an adverse employment action, and that the protected activity was causally connected to the adverse employment action."  Garrett v. University of Alabama at Birmingham Board of Trustees, 507 F.3d 1306, 1316 (11th Cir. 2007); see also Simpson v. State of Alabama Department of Human Resources, 2012 WL 6621400, *1 (Dec. 18, 2012)("To establish a *prima facie* case of retaliation [under the Rehabilitation Act], the plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal connection between the two events.").  "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action

are not completely unrelated." Simpson, 2012 WL 6621400, * 2. "Generally, close temporal proximity between the employee's protected conduct and the materially adverse action is sufficient circumstantial evidence to create a genuine issue of material fact about a causal connection." Id; see also Morales v. Georgia Department of Human Resources, Division of Family & Children Services, 446 Fed. Appx. 179, 183 (11th Cir. 2011)(same). Where the plaintiff's retaliation claim is premised on circumstantial evidence of intent, the court analyzes the claim "using the burden-shifting paradigm of McDonnell Douglas Corp. v. Green, 411 U.S. 792 [(1973)]." Simpson, 2012 WL 6621400 at *1. Under this framework, the employer may avoid the presumption of retaliation arising from the *prima facie* case by "articulat[ing] a legitimate, non-retaliatory reason for the employment action." See Barton, 478 Fed. Appx. at 631. If the employer does so, the plaintiff "must then establish that the proffered reasons are pretextual." Id.

Defendant contends that, in order to establish her retaliation claim, plaintiff must demonstrate that the materially adverse action was caused "solely" by plaintiff's protected activity. (See Defendant's brief, Doc. # 36, pp. 5, 14). Defendant argues that the "plain language of the Act" imposes such a requirement. (Id.) However, the plain language on which defendant relies does not refer to protected activity. See 29 U.S.C. § 794(a)("No otherwise qualified individual with a disability ... shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]")(emphasis added). As noted above, Rehabilitation Act retaliation claims are

8

premised on § 794(d)'s express incorporation of the ADA's anti-retaliation provision; this provision includes no language requiring that retaliation be caused "solely" by the protected activity to be actionable.   See 42 U.S.C. § 12203(a).[3]  Accordingly, the court finds defendant's contention without merit.  Defendant makes no other argument that may fairly be construed as challenging plaintiff's *prima facie* case of retaliation.  (See Doc. # 36).[4]

Defendant further argues that it "terminated Plaintiff's employment based on an

---

[3]  In its reply brief, defendant cites Gard v. U.S. Department of Education, 752 F.Supp.2d 30, 36 (D.D.C. 2010), *affirmed* 2011 WL 2148585 (D.C. Cir. Aug. 11, 2011), for its conclusion that "a plaintiff seeking vindication under the Rehabilitation Act must prove that his disability was the 'sole' or 'but for' reason for the employer's actions or inactions, regardless of whether the plaintiff advances a claim of discrimination based on disparate treatment, mixed-motive, or retaliation." (See Doc. # 42, pp. 10-12).  Despite this stated conclusion, the Gard court did not examine whether the plaintiff's *disability* was the sole reason for the employer's allegedly retaliatory action; instead, it analyzed whether the plaintiff had established that his employer "made it more difficult for Mr. Gard to obtain a reasonable accommodation of his disability solely because he filed a discrimination charge in March 2005" – *i.e.*, *solely because of his protected activity*.  Gard, 752 F. Supp. 2d at 37. While defendant would have this court make the same leap of logic, the "plain language of the statute" does not lead to the conclusion reached in Gard.  If  the causation phrase set forth in 29 U.S.C. § 794(a) applies to a claim of retaliation, as defendant contends, its "plain language" requires that a plaintiff alleging retaliation prove that the employer took materially adverse action against her "solely because of her or his *disability*" (§ 794(a))(emphasis added) – not solely because of her protected activity. This would lead to an absurd result – any plaintiff who suffered an adverse action based to *any* extent on protected activity could not establish a retaliation claim under the Rehabilitation Act.  The Sixth Circuit case defendant cites in further support of its argument is an ADA disparate treatment case in which the court concluded that the sole causation standard of the Rehabilitation Act did not apply to the plaintiff's ADA claim.  (Doc. # 42, pp. 12-13)(quoting Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312 (6th Cir. 2012)).

[4]  In its reply brief, defendant argues – for the first time – that "even if the term 'solely' is omitted from the prima facie retaliation requirements in contravention of the plain language of the Rehabilitation Act" plaintiff's *prima facie* case fails on other grounds.  (Doc. # 42, pp. 1-2).  The court declines to reach additional grounds for summary judgment not raised in defendant's initial brief.  The court will deny as moot plaintiff's motion for leave to file a surreply, her Rule 56(d) motion, and her motion for leave to file a supplemental response to the motion for summary judgment, as all of these motions are premised on plaintiff's need to respond to arguments defendant first raised in its reply brief.

honest belief that Plaintiff was out on Leave after exhausting all of her FMLA leave entitlement in August 2009 and as a result violated DIR's Leave Without Pay policy." (Doc. # 36, p. 15). The court understands defendant's argument to be that it has articulated a legitimate, non-retaliatory reason for plaintiff's termination. However, in presenting this argument, defendant relies entirely on the ALJ's written opinion. (Id., pp. 15-16. "Miscalculation of FMLA")(citing only Exhibit 1). While defendant's burden at this stage of the analysis is one of production only, the ALJ's opinion is not sufficient to meet it. To satisfy its burden of production, the defendant "'*must clearly set forth, through the introduction of admissible evidence, the reasons* for [its decision].'" Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone, 893 F.2d 1189 (11th Cir. 1990)(quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981))(emphasis in IMPACT). The ALJ's opinion does not constitute competent evidence of defendant's reason for terminating plaintiff's employment. Thus, defendant has failed to meet its burden of production as to plaintiff's claim of retaliatory termination. See IMPACT, 893 F.2d at 1193-94 (concluding that district court had erred in finding that the employer had met its burden of production where the defendants did not "offer proof by any person who made the employment decision, or by any other person, stating that the decision was made on the basis of what he or she thought demonstrated the best qualified person").[5] Accordingly, defendant has failed to establish its

---

[5] In presenting this argument, defendant chose to rely exclusively on the ALJ's written opinion, rather than on the underlying evidence. The court expresses no opinion regarding whether

entitlement to summary judgment on plaintiff's retaliation claim.

## Failure-to-Accommodate

A plaintiff may establish a claim under section 504 of the Rehabilitation Act  by demonstrating a failure to make a reasonable accommodation.  Nadler v. Harvey, 2007 WL 2404705, * 4 (11th Cir. Aug. 24, 2007)(unpublished opinion).[6, 7]  The Department of Labor regulations implementing section 504 provide that "[a] recipient [of Federal financial assistance] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped ... employee ... unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program or activity."  29 C.F.R. § 32.13; § 32.3.

To establish her failure-to-accommodate claim, plaintiff must show, *inter alia*, that she is an "otherwise qualified individual with a disability."  See 29 U.S.C. § 794(a); Nadler, 2007 WL 2404705 at *5).  For purposes of section 504, the Rehabilitation Act defines "individual with a disability" as – subject to exceptions not applicable here – "any person who has a disability as defined in section 12102 of Title 42."  29 U.S.C. § 705(20)(B).  The

---

other evidence of record not specifically cited by defendant in support of this argument might have sufficed to meet its burden.

[6] Nadler is unpublished and, therefore, is not binding; however, it is persuasive authority.

[7] In its order on defendant's motion to dismiss, the court observed that "[a] claim that an employer has failed to make reasonable accommodation for an employee's disability, if established in accordance with the applicable legal standards, logically constitutes discrimination solely because of the employee's disability."  (Doc. # 25, p. 5).  The cases defendant cites on the "solely by reason of" issue do not hold otherwise.  (See Doc. # 36, pp. 2-4).

incorporated ADA provision defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities of such individual" and "a record of such an impairment."[8] 42 U.S.C. § 12102(1)(A) and (B).  The statute provides examples of major life activities, including working and eating, and further provides that "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the ... digestive ... functions.  Id., § 12102(2).

Defendant contends that "[p]laintiff's gastrointestinal condition began in June of 2009."  Id. (citing "Ex. 4., p. 715, lines 5-6").[9]  Defendant further argues that "[b]y September 30, 2009, [plaintiff's] gastroenterologist determined she is not unable to perform any of her job functions due to the condition."  (Id.)(citing Exhibit 3u).  Defendant contends that plaintiff, therefore, cannot establish that she is disabled, because "[i]t is well established that the Rehabilitation Act does not extend to persons with temporary conditions or injuries." (Doc. # 36, p. 13).

Plaintiff's supervisor testified at the administrative hearing that plaintiff "continuously" displayed symptoms including "[b]elching and vomiting and nausea," and

---

[8] The definition further includes "being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1)(C).  As stated in the court's previous order (Doc. # 64), a "regarded as" disability cannot support a failure-to-accommodate claim.

[9] The testimony on which defendant relies does not establish that plaintiff's gastrointestinal condition began in June.  (See cited testimony).  Just prior to the cited testimony, plaintiff testified, "I asked about working different hours than other employees, especially when – from June, *when I got really sick in June and the employees were complaining about my illness*."  (Exhibit 4, pp. 714-15)(emphasis added).  Even if defendant had cited this testimony, it also  – viewed in the light most favorable to plaintiff – does not establish that plaintiff's condition began in June.

that the condition hampered plaintiff's ability to perform her job.  (Defendant's Exhibit 4, p. 66).  Plaintiff testifies by declaration that her digestive condition "was diagnosed in approximately April of 2009." (Doc. # 65-1, Hardy dec.).  Plaintiff further states that the gastrointestinal condition "causes [her] to belch frequently, vomit and suffer from nausea," it "substantially affects [her] eating and [her] ability to work, especially in the office setting," and that "the chronic belching and vomiting has not stopped."  (Id.).[10]  In Exhibit 3u (the September 30, 2009 questionnaire), plaintiff's gastroenterologist indicated, *inter alia*, that: he had been treating plaintiff for her condition (which commenced in "6/2007" approximately) since September 18, 2009 and had prescribed medication; plaintiff would "need to have treatment visits at least twice per year due to the condition"; plaintiff was scheduled to see him for follow-up in mid-October; it was not medically necessary for plaintiff to be absent from work; plaintiff was not unable to perform any of her job functions due to the condition; and the "[p]robable duration of [the] condition" was "unknown[.]" (Exhibit 3u).  Viewing the evidence in the light most favorable to the plaintiff, defendant has failed to establish that it is entitled to summary judgment on plaintiff's claim due to the "temporary" duration of her gastrointestinal condition.  See also 42 U.S.C. § 12102(4)(D)("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."); Plaintiff's Exhibit 2 (September 2,

---

[10]  Plaintiff also cites her own deposition testimony and the deposition testimony of Tom Pugh, Vivian Handy, and Brenda Chambliss.  (Doc. # 65, p. 3).  The cited depositions are not before the court, however, as they have not been filed by either party.

13

2009 letter from ADIR Director Surtees placing plaintiff on mandatory leave "due to [her] uncontrollable need to vomit while at work").

Defendant further contends that the gastroenterologist's determination "that [plaintiff] is **not** unable to perform any of her job functions due to the condition" and that "it was not medically necessary for her to be absent from work" is not consistent with plaintiff's allegation that she is "'unable to perform major life activities, including working, [absent] reasonable accommodation.'" (Doc. # 36, p. 14)(citing Exhibit 3u and quoting Complaint, ¶ 23)(emphasis in original). Defendant's quotation of plaintiff's allegation is misleading. Paragraph 23 of the complaint reads, in full, as follows:

> Plaintiff has a physical impairment that substantially limits one or more of her major life activities. Plaintiff was diagnosed with a gastrointestinal condition that causes her to belch frequently and sometimes vomit. Her disability renders her unable to perform major life activities, including working, that the average person in the general population can perform, *or significantly restricts Plaintiff as to the condition, manner or duration under which she can perform those major life activities* as compared to an average person in the general population. However, with a reasonable accommodation, such as job restructuring, modified work schedule or similar accommodation, Plaintiff can still perform the essential functions of her job.

(Complaint, ¶ 23)(emphasis added). The point that defendant is trying to make here is not clear to the court. However, to the extent that defendant contends that plaintiff cannot demonstrate a "disability" for purposes of her Rehabilitation Act claim because she is able to perform the functions of her job and because she did not have a medical need to be absent from work, the court cannot agree. In order to be entitled to the protection of the Rehabilitation Act, a disabled individual must be "qualified" – *i.e.*, "an individual who, with

or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds[.]" 42 U.S.C. § 12111(8); see also 29 U.S.C. § 794(d)(incorporating ADA standards). Thus, being able to perform the functions of her job does not mean that plaintiff does not have a disability within the meaning of the statute. Additionally, the ADA's definition of disability does not include a requirement that the individual have a medical requirement to be absent from work. See 42 U.S.C. § 12102(1)(A) and (B). Defendant further argues – again citing the gastroenterologist's determination that plaintiff "did not need to be absent from work" – that "as of September 30, 2009, Plaintiff did not need any accommodation." (Doc. # 36, p. 15). Defendant cites no authority for the proposition that an individual's ability to attend work establishes that the individual needs no accommodation; the court finds that the latter conclusion does not follow from the doctor's determination.

Defendant argues that plaintiff cannot establish her failure-to-accommodate claim because "the evidence establishes that Plaintiff was satisfied with her accommodations until September 2, 2009, which is the date Plaintiff was recommended for termination" and "[a] co-worker called as a witness by Plaintiff during her Personnel Board hearing testified that Plaintiff's supervisor was just trying to accommodate her and accommodate everyone in the office." (Doc. # 36, p. 15)(citing Exhibit 3u and Exhibit 4, pp. 626-27, 716).[11]  This

---

[11] Plaintiff's coworker testified, "It was stated that, you know, when she was there, that she would go in her office, that she would close the door so that, you know everybody – people passing by couldn't hear her burping.  But other – and then, you know, I guess Mr. Pugh stated that he was going to do everything that he could because he was – he was just trying to accommodate her and

argument is wholly without merit.  In her complaint, plaintiff alleges:

> Plaintiff's supervisor initially agreed in August, 2009 to accommodate Plaintiff by allowing her to continue to work as long as she confined herself to her office or the restroom whenever possible when she had the need to vomit, and allowing Plaintiff to work a modified schedule and be allowed to work intermittently when her vomiting became frequent. *However, this accommodation was taken away and on September 2, 2009, plaintiff was placed on Mandatory Leave without pay until January 15, 2010 when she was finally terminated.*

(Complaint, ¶ 27)(emphasis added).  Thus, plaintiff's claim is that *after September 2, 2009*, defendant denied plaintiff a reasonable accommodation.  Evidence that plaintiff was satisfied with the accommodation before defendant withdrew it, and that Pugh was trying to accommodate plaintiff and "everyone else in the office" before defendant withdrew the accommodation does not impeach this claim in any way.  The arguments that defendant has presented fail to establish defendant's entitlement to summary judgment on plaintiff's failure-to-accommodate claim.

## CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1) plaintiff's motion for leave to file a surreply (Doc. # 44), her Rule 56(d) motion (Doc. # 45), and her motion for leave to file a supplemental response to the motion for summary judgment (Doc. # 48) are DENIED;

(2) plaintiff's motion to seal (Doc. # 51) is GRANTED; and

(3) defendant's motion for summary judgment (Doc. # 36) is DENIED.

---

accommodate everyone in the office."  (Exhibit 4, pp. 626-27).

Done, this 29th day of March, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE